**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JULYA O. HUMPHREY, an individual, | ) | |
| and RICHARD D. HUMPHREY, | ) | |
| an individual, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11-CV-272-GKF-PJC |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. BANK, N.A., D/B/A | ) | |
| U.S. BANK HOME MORTGAGE, | ) | |
| a foreign corporation doing business in | ) | |
| the State of Oklahoma, and | ) | |
| CAPITAL ONE SERVICES, LLC, | ) | |
| a foreign limited liability company doing | ) | |
| business in the State of Oklahoma, | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

Before the court are the Motion to Dismiss of defendant Capital One Services, LLC ("Capital One") [Dkt. #11] and the Motion to Dismiss of defendant U.S. Bank, N.A. ("U.S. Bank") [Dkt. #18]. Both motions seek dismissal of plaintiffs' petition pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiffs filed suit in Rogers County, Oklahoma, District Court. Defendants removed the case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Subsequently, both defendants filed the pending motions to dismiss.

## I. Allegations of Petition

Plaintiffs' Petition alleges the Humphreys, husband and wife, had an existing home mortgage with U.S. Bank prior to the events giving rise to this lawsuit. [Dkt. #2-1, Petition, ¶3]. In November 2009, Richard Humphrey applied online for a refinance offer by U.S. Bank. [*Id.,* ¶¶4-5]. Shortly thereafter, he received a call from U.S. Bank and, after some discussion, the bank represented it would quickly refinance the Humphreys' existing mortgage for $1,200.00. [*Id.,* ¶5]. Plaintiffs allege "U.S. Bank's representation of the amount of closing costs required to close the refinance was false, knowingly deceptive and designed to bait the customer into committing to refinance with U.S. Bank," and "[n]ot knowing the wrongful true intentions of U.S. Bank, Humphrey told U.S. bank they accepted the offer, and in response were told they would receive paperwork regarding the refinancing shortly." [*Id.*].

The paperwork U.S. Bank subsequently sent Humphrey disclosed estimated closing costs of $2,020.63. Plaintiffs allege the bank's "representations of the amount of closing costs required to close the refinance was again false, knowingly deceptive and designed to bait the customer into committing to refinance with U.S. Bank." [*Id.,* ¶6]. The estimated costs included title insurance in the amount of $643.6; a "Line 812 'Process Fee'" of $350.00; a "Recording Service Fee" of $55.00; and an "Attached Addendum Subtotal" of $200.00 (Escrow Service Fee); [*Id.*]. The payoff of the existing mortgage was listed as $267,772.00. [*Id.*] "Humphrey noticed the $800.00 increase in closing costs ($1,200.00 versus $2,020.63), but still felt it was worthwhile to refinance," and "[n]ot knowing the wrongful true intentions of U.S. Bank, but in reliance upon the amount of closing costs represented by the 'Good Faith' estimate paperwork, Humphrey signed several papers, including papers agreeing to pay for a real estate appraisal.

[*Id.*, ¶7]. Humphrey's consent to the transaction was induced in part upon U.S. Bank's representation of the total amount of closing costs of $2,020.63." [*Id.*].

Humphrey provided U.S. Bank with his Capital One Visa card account information as the source of payment for the appraisal as part of the transaction. [*Id.*, ¶8]. "Relying upon Capital One's promotions (what's in your wallet), promise and representations (fraud protection/zero liability), Humphrey acquired this card for remote transactions believing it provided the most protection." [*Id.*, ¶9]. U.S. Bank represented it would provide a copy of the appraisal to Humphrey. [*Id.*, ¶10].

Plaintiffs allege that shortly before the scheduled closing, "Humphrey learned that U.S. Bank intended to increase the amount of closing costs by more than double," and "changed the terms of their agreement to include artificially inflated or bogus charges in an effort to extract more closing costs from Humphrey." [*Id.*, ¶11]. In the February 1, 2010 disclosure, "'Title Insurance' had almost doubled in amount to $1,250.00" and "'Attached Addendum subtotal' ballooned to $1,425.00." [*Id.*]. The disclosure listed for the first time a "Document Signing Fee" of $800.00, a new "Line 1137 'Processing Fee'" of $75.00; a "Wire Fee" of $25.00; the "Recording Service Fee" had been increased to $75.00; and an "Escrow Service Fee that had more than doubled, to $450.00. [*Id.*]. Additionally, the payoff amount on the existing mortgage had grown to $269,258.19, "despite the fact that Humphrey had made additional timely mortgage payments, thereby reducing their principal balance." [*Id.*].

Plaintiffs allege they "communicated with U.S. Bank in an effort to close the refinance with closing costs in line with the amount used by U.S. Bank to solicit Humphrey's signatures in November 2009, and "told U.S. bank that they felt that they had been misled and deceived by U.S. Bank," [*Id.*, ¶12]. "Despite repeated requests to close the refinance loan with closing costs

3

that were in line with amounts quoted by U.S. Bank in November 2009, U.S. Bank refused and ultimately this loan was not closed with U.S. Bank." [*Id.,* ¶13.].

Humphrey demanded that the $316.00 in fees they had prepaid be immediately returned, but U.S. Bank responded that fees would not be refunded and advised they were charging $415.00 on Humphrey's Capital One credit card provided in November 2009 for the appraisal. [*Id.,* ¶¶14-15]. "Humphrey responded by telling U.S. Bank that it had not been honest and had misrepresented their offer to refinance and, therefore, Humphrey would not pay these fees, that they would have the $316.00 charge reversed if U.S. Bank continued to refuse to refund it and finally they specifically advised U.S. Bank that it was not authorized to make any charges to their credit card," and "Humphrey revoked U.S. Bank's written authorization to make charges to the Capital One Visa card." [*Id.,* ¶15].

Plaintiffs allege, "Notwithstanding the Humphrey revocation of authorization, on February 22, 2010, U.S. Bank charged $415.00 to Capital One account." [*Id.,* ¶16]. Humphrey learned of the charge a few days later and initiated an electronic dispute of the charge. He received a phone call from Capital One regarding the dispute in which he answered several Capital One questions. [*Id.,* ¶17]. Initially, Humphrey's Capital One account was credited for the U.S. Bank charge. [*Id.,* ¶19]. Plaintiffs allege, "However, U.S. Bank apparently responded to Capital One's notice of dispute by providing copies of the documents signed by Humphrey in November 2009. U.S. Bank, with knowledge of the grounds for Humphrey's dispute, decided to resubmit the charge, knowing that it was foreseeable that Capital One would assess the charge against Humphrey's account, thereby forcing Humphrey to pay or risk damage to their credit and be subjected to collections which actually occurred and continue to this date." [*Id.*].

4

The Petition states, "Humphrey were not aware U.S. Bank resubmitted the charges until some time in June 2010 when they reviewed their monthly electronic billing statement. Humphrey were shocked to see the U.S. Bank charge again. Prior to this electronic statement, Humphrey had not receive any updates via electronic communications concerning the dispute after their account had been credited months before." [*Id.,* ¶20]. Further, "During their relationship with Capital One, it has not been uncommon for Capital One to send solicitations/promotions/cash advance checks/balance transfer solicitation and monthly statements to Humphrey using the U.S. Mails. Humphrey routinely disregarded these Capital One mailings and since they reviewed account statements and made payments online, they had no expectation Capital One would communicate with them regarding this dispute in anything other than an electronic format since their dispute was initiated electronically and credit had been applied electronically." [*Id.,* ¶21].

Plaintiffs alleged, "Upon seeing the U.S. Bank charge again, Humphrey searched through recent Capital One mailings and found a letter dated May 17, 2010, demanding information, documents and a response on or before May 24, which at that point was impossible." [*Id.,* ¶22]. "Immediately thereafter on June 27, 2010, Humphrey, via the U.S. Mail, initiated another dispute regarding the U.S. Bank charge." [*Id.,* ¶23]. "This subsequent dispute was not substantially the same because Humphrey informed Capital One that U.S. Bank's authorization to charge Humphrey's visa card had been revoked and the authorization withdrawn before U.S. Bank charged the card. Humphrey also informed Capital One, that despite representations from U.S. Bank that Humphrey would receive a copy of the appraisal which was the basis of the charge, Humphrey never received the same." [*Id.*]. Plaintiffs allege Capital One never investigated nor resolved the Humphrey June 27, 2010 billing dispute , and "Capital One has repeatedly

5

demanded Humphrey pay the fraudulent charge and has unleashed its debt collectors who have made countless calls and damaged Humphrey." [*Id.,* ¶¶24-25]. Plaintiffs allege, "Humphrey would not have opened nor maintained this Capital One Visa card had they known Capital One would disregard their claim of fraud by U.S. Bank and seek to collect these wrongful charges against their account holder, Humphrey." [*Id.,* ¶26].

Regarding Capital One, plaintiffs allege, "Capital One has misrepresented the features, advantages and benefits of its fraud protection/zero liability/what's in your wallet Visa card, has engaged in deceptive and unfair trade practices in this regard and has billed and sought to collect sums using Humphrey's Visa card which were not authorized at the time the Visa card was charged." [*Id.,* ¶27].

Regarding U.S. Bank, plaintiffs allege, "U.S. Bank's refinance tactics were deceptive and unfair, and "[d]espite numerous requests to U.S. Bank for a copy of the alleged appraisal, Humphrey never received it" and "Humphrey has no knowledge of an appraiser acting on behalf of or at the request of U.S. Bank actually entering their home to appraise same." [*Id.,* ¶¶28-29].

Plaintiffs contend "[t]he Defendants conduct is prohibited by and punishable by 23 OS §9.1 (Oklahoma's punitive damages statute)." [*Id.,* ¶31]. They seek damages against both defendants in excess of $75,000. [*Id.,* at 7-8].

### III. Analysis

Defendants contend the First Amended Complaint fails to meet the pleadings requirements of either Fed.R.Civ.P. 9(b) or Rule 8(a)(2), and should therefore be dismissed pursuant Rule 12(b)(6).

## A. Applicable Standards

### 1. Rule 8(a)(2)

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court clarified this standard in *Bell Atlantic Corp. v. Twombly,* ruling that to withstand a motion to dismiss a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations omitted). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

Under the *Twombly* standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1965 (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Although the new *Twombly* standard is "less than pellucid," the Tenth Circuit Court of Appeals has interpreted it as a middle ground between "heightened fact pleading," which is

7

expressly rejected, and complaints that are no more than "labels and conclusions," which courts should not allow. *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1964, 1965, 1974. Accepting the allegations as true, they must establish that the plaintiff plausibly, and not just speculatively, has a claim for relief. *Robbins*, 519 F.3d at 1247. "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id*. at 1248. The Tenth Circuit Court of Appeals instructed in *Robbins* that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context. . . .[and] the type of case." *Id*. (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008)). A simple negligence action may require significantly less allegations to state a claim under Rule 8 than a case alleging anti-trust violations (as in *Twombly*) or constitutional violations (as in *Robbins*). *Id*.

### 2. Rule 9(b) Pleading Requirements

Fed.R.Civ.P. 9(b) provides:

In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Rule 9(b)'s purpose "is to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based." *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotations and citations omitted). The Tenth Circuit "requires a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (internal quotations and citations omitted). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when,

8

where and how' of the alleged fraud, and [she] must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702, 726-27 (10th Cir. 2005). Rule 9(b)'s particularity requirement, however, is not absolute or limitless; a plaintiff need not go so far as to give the defendant a 'pretrial memorandum containing all the evidentiary support for plaintiff's case." *Schrag v. Dinges,* 788 F.Supp. 1543, 1550 (D. Kan. 1992) (citation omitted).

In reviewing a motion to dismiss pursuant to Rule 9(b), the court must confine its analysis to the text of the complaint, accepting as true all well-pleaded facts as distinguished from conclusory allegations. *Id.* at 726. Those facts must be viewed in the light most favorable to the non-moving party. *Id.*

### A. Claim Against Capital One

Plaintiffs' Petition fails to satisfy either the *Twombly* standard for pleading under Rule 8 or the heightened pleading requirement of Rule 9. The Petition lists no causes of action and references no legal claims other than one for punitive damages. Thus, it is impossible to discern from the face of the Petition what cause or causes of action plaintiffs assert against Capital One.[1] Further, to the extent plaintiffs have attempted to allege fraud against Capital One, they have failed to set forth *any* factual allegations concerning the time, place and contents of the false

---

[1] Capital One speculates the Petition may attempt to assert claims for fraud, violation of the Oklahoma Deceptive Trade Practices Act ("ODPA"), 78 O.S. § 51, *et seq.,* the Oklahoma Consumer Protection Act ("OCPA"), 15 O.S. § 752, *et seq.*, and/or a common law claim for "intrusion on seclusion" for Capital One's collection efforts. Capital One correctly notes that plaintiffs cannot state a claim under the ODPTA, because it protects business competitors rather than consumers. *See Precision Aggregate Products, LLC v. CMI Terex Corp.,* 2007 WL 3232187, at *6 (W.D. Okla. Oct. 31, 2007). In their response, plaintiffs acknowledge they seek to state claims for violation of the OCPA, for Intrusion upon Seclusion, for violation of the Fair Credit Billing Act, 15 U.S.C. §§ 1666-1666j, and its implementing regulations, and for fraud.

representation, the identity of the party making the false statements and the consequences thereof. Additionally, the Petition discloses that plaintiffs failed to timely dispute the second U.S. Bank charge, and plaintiffs fail to articulate any basis for their claim that Capital One had any obligation to investigate or resolve their belated challenge. Therefore, Capital One's motion must be granted.

## B. Claim Against U.S. Bank

In their response to U.S. Bank's motion, plaintiffs contend they have asserted claims for fraud and/or deceit, "fraudulently causing charges to be incurred on Humphrey's credit card," breach of contract and fraudulent inducement, and negligence. [Dkt. #24].[2] However, the Petition fails to satisfy the pleading requirements of Rule 8, inasmuch as it sets forth no causes of action or legal claims other than a reference to Oklahoma's punitive damages statute. Furthermore, to the extent plaintiffs purport to allege a fraud claim, they have failed to set forth factual allegations meeting Rule 9's heightened pleading standards.

## III. Conclusion

For the reasons set forth above, both Capital One's Motion to Dismiss [Dkt. #11] and U.S. Bank's Motion to Dismiss [Dkt. # 18] are granted. Plaintiffs are granted leave to file an amended complaint on or before January 25, 2012.

ENTERED this 5th day of January, 2012.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

---

[2] Plaintiffs appear to concede they cannot assert a private cause of action for alleged violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2604(c), or the OCPA.

10