### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JULYA O. HUMPHREY, an individual, ) <br> and RICHARD D. HUMPHREY, ) <br> an individual, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> U.S. BANK, N.A., d/b/a ) <br> U.S. BANK HOME MORTGAGE, ) <br> a foreign corporation doing business in ) <br> the State of Oklahoma, and ) <br> CAPITAL ONE SERVICES, LLC, ) <br> a foreign limited liability company doing ) <br> business in the State of Oklahoma, ) <br> ) <br> Defendants. ) | Case No. 11-CV-272-GKF-PJC |

### **OPINION AND ORDER**

Before the court is the Motion to Dismiss Plaintiffs' Amended Complaint [Dkt. #30] filed by defendant Capital One Services, LLC ("Capital One"). Capital One seeks dismissal of plaintiffs' third, fourth and fifth counts against it.

This lawsuit arises from efforts by plaintiffs, Julya O. Humphrey and Richard D. Humphrey, to refinance their home with defendant U.S. Bank, N.A., d/b/a U.S. Bank Home Mortgage ("U.S. Bank"). Capital One is named as a defendant based on its alleged mishandling of a $415 appraisal fee charge U.S. Bank made to plaintiffs' Capital One credit card.

The court dismissed plaintiffs' original Petition pursuant to Fed.R.Civ.P. 12(b)(6), based on plaintiffs' failure to satisfy the pleading requirements of Fed.R.Civ.P. 8. [Dkt. #27]. Plaintiffs were given leave to file an amended complaint. [*Id.*].

In their Amended Complaint, plaintiffs asserted claims of fraud, breach of contract and negligence against U.S. Bank (Counts I, II and VI) and claims of violation of the Fair Credit Billing Act, intrusion upon seclusion and negligence (Counts III, IV and V) against Capital One. Capital One once again seeks dismissal of all claims against it.

## I. Allegations of the Amended Complaint

The Amended Complaint alleges that in November 2009, plaintiffs applied online to refinance their existing home mortgage with U.S. Bank. [Dkt. #28, ¶¶4-6]. U.S. Bank provided a Good Faith Estimate of Settlement Costs dated November 18, 2009 ("GFE 1"), which disclosed estimated good faith closing costs totaling $2,020.63. [*Id.,* ¶10]. Plaintiffs allege that subsequently, U.S. Bank prepared a second Good Faith Estimate ("GFE 2") in which closing costs of $4,500 were estimated. [*Id.,* ¶¶22-23]. Thereafter, U.S. Bank prepared and sent a third Good Faith Estimate ("GFE 3") which disclosed closing costs of $4,134.95. [*Id.,* ¶26]. Plaintiffs allege the closing costs were inflated and were not justified or based on any good faith reason or change in circumstances requiring additional costs. [*Id.,* ¶27]. When U.S. Bank refused to close the loan for costs disclosed in GFE 1, plaintiffs applied for and obtained a refinance loan with RCB Bank. [*Id.,* ¶¶31-37].

During the refinance process with U.S. Bank, plaintiffs entered into an agreement with U.S. Bank for a real estate appraisal. [*Id.,* ¶42]. As a part of plaintiffs' agreement to pay for the appraisal, U.S. Bank represented it would provide a copy of the appraisal to plaintiffs. [*Id.,* ¶44]. In return for the performance of the appraisal and for delivery of a copy of the appraisal,

plaintiffs agreed to allow the cost for the appraisal to be charged to their Capital One credit card. [*Id.,* ¶45]. Plaintiffs allege that no appraiser contacted them to arrange for performance of the appraisal or entered their home to perform an appraisal. [*Id.,* ¶¶46-47]. Plaintiffs allege "upon information and belief," no appraisal was actually performed. [*Id.,* ¶48]. No appraisal was ever delivered to plaintiff. [*Id.,* ¶49].

Plaintiffs allege that, nevertheless, on February 22, 2010, U.S. Bank charged $415.00 to their Capital One account. [*Id.,* ¶57]. Plaintiffs learned of the charge on-line and "promptly initiated an electronic dispute of the charge with Capital One but Capital One's electronic dispute process limited Humphrey's ability to provide details about the dispute." [*Id.,* ¶58.]. Plaintiffs allege, "Upon information and belief, Humphrey[1] initiated this dispute during the January 28 to February 27, 2010 billing cycle." [*Id.,* ¶59]. Shortly after initiating the dispute, plaintiffs received a phone call from Capital One regarding the dispute in which plaintiffs answered several Capital One questions. [*Id.,* ¶60]. Capital One acknowledged receipt of the billing error dispute in a letter dated March 22, 2010, in which it advised the account had been credited in the amount of $415.00 and stated "[u]nless the merchant resubmits the charge within 45 days of the date of this letter, we consider your case closed. If this occurs, we'll notify you and re-bill your account for the amount of the credit." [*Id.,* ¶61].

Plaintiffs contend, "Capital One did not inform Humphrey that the charge had been resubmitted within 45 days and Humphrey believed their case had been closed." [*Id.,* ¶62]. Plaintiffs allege Regulation Z, 12 CFR § 226.13(c) allows creditors "2 complete billing cycles (but in no event later than 90 days) after receiving a billing error notice" to comply with appropriate resolution procedures. [*Id.,* ¶63]. "Upon information and belief, Capital One uses a

---

[1] Plaintiffs' Amended Complaint refers to Julya O. Humphrey and Richard D. Humphrey collectively as "Humphrey."[Dkt. #28, ¶1].

monthly billing cycle with between 28 and 31 days per cycle" and "two full billing cycles from the date of the electronic dispute would have expired on or about April 27, 2010." [*Id.,* ¶¶64-65]. "After the time for doing so had expired, in a letter dated May 17, 2010, Capital One informed Humphrey of the reinstatement of the U.S. Bank charge and demanded additional information from Humphrey." [*Id.,* ¶66]. "Upon information and belief, the May 17, 2010 letter was outside of the two billing cycles allowed Capital One to fully comply with the resolution procedures in violation of regulation Z and 15 U.S.C. § 1666." [*Id.,* ¶67].

Plaintiffs complain that although Capital One informed them that U.S. Bank had 45 days to resubmit the charges, it did not notify them U.S. Bank had resubmitted the charge until its letter dated May 17, 2010, some 56 days after the date of the March 22, 2010 letter. [*Id.,* ¶68]. Plaintiffs contend, "Upon information and belief, U.S. Bank failed to resubmit the charge within 45 days and the case should have been considered closed." [*Id.,* ¶69]. Plaintiffs allege pursuant to Regulation Z § 226.13 and 15 U.S.C. § 1666, Capital One was required to perform a reasonable investigation of their billing dispute. [*Id.,* ¶70]. They contend Capital One's investigation was not reasonable "as it made unreasonable and untimely demands upon the Plaintiffs, failed to investigate whether the appraisal was actually received as promised, and focused its investigation instead upon the quality, description, and effects of non-existent merchandise." [*Id.,* ¶71]. The May 17, 2010 letter gave plaintiffs until May 24, 2010 to provide the demanded documentation or Capital One would consider the case closed. [*Id.,* ¶73]. Plaintiffs' receipt of the letter could not have occurred prior to May 19, 2010, and Capital One's demand for information to be returned to it within five days or less was not a reasonable investigation, nor was its demand requiring a signed "second opinion from a merchant in the same field." [*Id.* ¶¶75-76]. Plaintiffs contend a reasonable investigation into whether U.S. Bank

4

was authorized to make the disputed charge or whether U.S. Bank ever performed the appraisal and/or delivered a copy of the appraisal to the plaintiffs would neither require documentation regarding or inquiry into "how the merchandise you received is defective" or "how the merchandise ordered differs from the merchandise received." [*Id.,* ¶77].  Plaintiffs allege the letter was intended as "an overly burdensome series of obstacles designed to prevent resolving the dispute in the Humphrey's favor," as evidenced by "the time constraints placed upon Humphrey by this letter which required all of this documentation within an extremely narrow window,  including information form a third party and not within the control of Humphrey." [*Id.,* ¶78].  Plaintiffs allege, "Upon information and belief, Capital One engaged in a pattern and practice of sending form letters to consumers demanding irrelevant information in an unreasonably short period of time and then closing consumers' disputes by a default resolution in favor of the merchant for failure to provide the information demanded." [*Id.,* ¶79].  Plaintiffs contend "[t]his is further evidenced by Capital One's allowance to U.S. Bank of 45 days to provide documentation and to resubmit the charge, compared to the consumers nearly impossible task of responding back within 7 days of the original mailing." [*Id.,* ¶80].  Plaintiffs allege Capital One attached documents and a letter received from U.S. Bank concerning the charge to the letter dated May 17, 2010, and those documents did not address or provide evidence regarding completion of the appraisal or delivery of the completed appraisal to them.  [*Id.,* ¶¶81-82].  Plaintiffs contend Capital One failed to conduct any investigation into whether the appraisal was actually performed or if a completed appraisal was delivered to the plaintiffs.  [*Id.,* ¶83].  "In the alternative, on May 17, 2010 Capital One informed Humphrey of its decision to 're-bill the charge to your account.  This adjustment will appear on your next monthly statement." [*Id.,* ¶84].  Plaintiffs allege, "Upon information and belief, the actual charge appeared on a monthly

5

statement for the period of April 28, 2010 to May 27, 2010 and was available after May 28, 2010." [*Id.,* ¶85]. Plaintiffs contend they sent an additional dispute of this charge in a letter dated June 27, 2010, informing Capital One, "as part of the appraisal agreement, the bank was to provide us a copy of the appraisal within 3 days. We never received a copy, even though we informed the bank by phone that we had not received the appraisal." [*Id.,* ¶¶86-87]. Plaintiffs allege the dispute letter "clearly and expressly raised an issue not addressed in the documentation attached to the May 17, 2010 letter from Capital One and apparently not addressed by Capital One's investigation of the initial dispute." [*Id.,* ¶88]. Plaintiffs contend Capital One either failed to conduct a reasonable investigation of this issue despite notice of this portion of the dispute in its investigation of the original dispute or the Humphreys raised a new issue in the June 27, 2011 letter, thereby initiating a dispute substantially different from the original dispute. [*Id.,* ¶89]. Plaintiffs allege they reasserted the billing error within a reasonable time after receipt of the May 17, 2010 letter, and Capital One violated Regulation Z § 226.13 and 15 U.S.C. § 1666 by failing to perform a reasonable investigation of the June 27, 2010 dispute that was substantially different from the electronic dispute. [*Id.,* ¶¶90-92]. They contend Capital One never investigated or resolved their June 27, 2010 billing dispute. [*Id.,* ¶93]. Plaintiffs allege Capital One's violations of Regulation Z § 226.13 and 15 U.S.C. § 1666 caused them emotional distress, damage to their credit scores and other non-pecuniary damages and entitle them to statutory damages. [*Id.,* ¶94].

Plaintiffs also contend "Capital One has repeatedly demanded Humphrey pay the fraudulent charge and has unleashed its debt collectors, who have made countless calls invading Humphrey's privacy," despite knowing that consent had been obtained by fraud and being put on notice that authorization for the charge had been revoked, the appraisal was never delivered, and having failed to perform a reasonable investigation, and Capital One's conduct was reckless or

malicious. [*Id.*, ¶¶97-98]. Plaintiffs allege Capital One and its collectors caused calls to be made 8-10 times per day to each of plaintiffs' three phone lines for a total of 24-30 calls per day, and the calls began in either late September or early October of 2010 and continued until suit was filed in March of 2011. [*Id.,* ¶¶99-100]. Plaintiffs assert Capital One's conduct caused them emotional distress.

Plaintiffs allege Capital One failed to perform any investigation of their June 27, 2010 dispute, or any investigation into the claim the appraisal was not delivered, and withheld from plaintiffs information it received from U.S. Bank regarding the dispute until it was impossible for plaintiffs to respond within the time allowed. [*Id.,* ¶106]. Plaintiffs contend Capital One's "breach of its duty to perform a reasonable investigation" caused them emotional distress." [*Id.,* ¶107].

Plaintiffs assert claims of violation of Regulation Z and 15 U.S.C. § 1666; intrusion upon seclusion/invasion of privacy; and negligence. They seek actual, statutory and punitive damages.

## II. Applicable Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court clarified this standard in *Bell Atlantic Corp. v. Twombly,* ruling that to withstand a motion to dismiss a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal

quotations omitted). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

Under the *Twombly* standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1965 (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Although the new *Twombly* standard is "less than pellucid," the Tenth Circuit Court of Appeals has interpreted it as a middle ground between "heightened fact pleading," which is expressly rejected, and complaints that are no more than "labels and conclusions," which courts should not allow. *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1964, 1965, 1974. Accepting the allegations as true, they must establish that the plaintiff plausibly, and not just speculatively, has a claim for relief. *Robbins*, 519 F.3d at 1247. "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. The Tenth Circuit Court of Appeals instructed in *Robbins* that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context. . . .[and] the type of case." *Id.* (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008)). A simple negligence action may require significantly less allegations to state a claim under Rule 8

than a case alleging anti-trust violations (as in *Twombly*) or constitutional violations (as in *Robbins*). *Id*.

### III. Analysis

### A. Fair Credit Billing Act Claim

The Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, and its implementing regulation, 12 C.F.R. §2213 ("Regulation Z"), provide a process for consumers to dispute credit card charges based on billing errors. Under that statute, if a creditor, within 60 days after having transmitted to an obligor a statement, receives a written notice indicating the obligor's belief that the statement contains a billing error, the amount of the billing error, and the reasons for the obligor's belief that the statement contains a billing error, then the creditor must, within 30 days, send a written acknowledgment of the notice. In addition, not later than two complete billing cycles after receipt of the notice, the creditor must make appropriate corrections or send a written explanation of the reasons why the creditor believes the account of the obligor was correctly shown. 15 U.S.C. § 1666(a). Under Regulation Z, the creditor is required to comply with resolution procedures (also set out in Regulation Z) within two complete billing cycles (but in no event later than 90 days) after receiving a billing error notice. 12 C.F.R. § 2213(c). If a creditor determines that a billing error occurred, it is required, within the time limits, to correct the billing error, credit the consumer's account with any disputed amount and related finance or other charges, as applicable, and mail or deliver a correction notice to the consumer. 12 C.F.R. § 2213(e). If, after conducting a "reasonable investigation," the creditor determines no billing error occurred, the creditor is required, within the time limits, to mail or deliver to the consumer an explanation that sets forth the reasons for the creditor's belief that the billing error alleged by the consumer is incorrect in whole or part. 12 C.F.R. § 2213(f).

The Amended Complaint alleges Capital One violated the FCBA's time limit for dispute resolution and its requirement to conduct a reasonable investigation. Capital One contends, though, that plaintiffs' Amended Complaint fails to allege facts which support these claims.

Taking as true the facts alleged in the Amended Complaint, it is clear that Capital One's handling of plaintiffs' original bill dispute complied with the FCBA and Regulation Z. According to the complaint, plaintiffs reported the billing error during the January 28 to February 27, 2010 billing cycle. [Dkt. #28, ¶59]. After an investigation, Capital One sent plaintiffs a letter dated March 22, 2010, informing them the account had been credited in the amount of $415.00, and stating, "[u]nless the merchant resubmits the charge within 45 days of the date of this letter, we consider your case closed. If this occurs, we'll notify you and will re-bill your account for the amount of the credit." [*Id.,* ¶¶60-61]. Thus, the investigation was completed within two billing cycles and was reasonable, as required by the statute and regulation. Plaintiffs' allegations regarding subsequent events must be viewed in light of 12 C.F.R. § 2213(h), which states:

> (h) *Reassertion of billing error.* A creditor that has fully complied with the requirements of this section has no further responsibilities under this section…if a consumer reasserts substantially the same billing error.

12 C.F.R. § 2213(h). The Amended Complaint states in a conclusory manner that U.S. Bank's resubmission of the charge initiated a dispute that "was substantially different from the original dispute." [Dkt. #28, ¶89]. However, the facts alleged in the Amended Complaint establish otherwise. The charge was by the same vendor, for the same amount, for the same service—a real estate appraisal in connection with plaintiffs' refinancing application. Under 12 C.F.R. § 2213(h), the manner in which Capital One handled the rebilling is not subject to the requirements of the FCBA or Regulation Z.

Therefore, Count III of the Amended Complaint must be dismissed.

### B. Negligence Claim

Plaintiffs assert Capital One was negligent in the manner it handled the U.S. Bank billing dispute. "The threshold question in any negligence action is whether the defendant owed a duty of care to the plaintiff." *Morales v. City of Oklahoma City,* 230 P.3d 869, 878 (Okla. 2010). Plaintiffs argue that the FCBA and Regulation Z impose duties to perform a timely and reasonable investigation of billing disputes, and Capital One's alleged violation of those laws constitutes negligence per se. [Dkt. #31 at 23]. Because the court has dismissed plaintiffs' FCBA claim, the negligence claim, too, must be dismissed.

### C. Intrusion upon Seclusion Claim

Oklahoma recognizes the common-law tort of invasion of privacy upon one's seclusion and has adopted the definition of intrusion upon seclusion set forth in the Restatement (Second) of Torts, § 652B. *Gilmore v. Enogex, Inc.,* 878 P.2d 360, 366 (Okla. 1966).[2] In order to prevail upon such a claim, plaintiffs must prove (1) a nonconsensual intrusion (2) which was highly offensive to the reasonable person. *Id.*

Capital One asserts plaintiffs have failed to state facts supporting the second element of their claim, i.e., that the conduct was highly offensive to a reasonable person.

Comment *d.* to the Restatement (Second of Torts), § 652B, states:

> *d.* There is…no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the

---

[2] The Restatement (Second) of Torts, § 652B, states that "one who intentionally intrudes physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

> telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

Restatement (Second) of Torts, § 652B.  Here, plaintiffs have alleged Capital One knew or should have known the U.S. Bank charge was not owed, yet caused calls to be made 8-10 times per day to each of plaintiffs' three telephone lines for a total of 24-30 calls per day, for a period starting in late September or early October of 2010 and continuing until plaintiffs filed suit in March 2011.  [Dkt. #28, ¶¶99-100].  These factual allegations—taken as true—could amount to a "course of hounding" that was "a substantial burden to [plaintiffs'] existence," and thus state a claim for intrusion of seclusion/invasion of privacy under Oklahoma law.

Therefore, Capital One's Motion to Dismiss Count IV must be denied.

### IV. Conclusion

For the foregoing reasons, defendant Capital One's Motion to Dismiss [Dkt. #30] is granted in part and denied in part.  Counts III and V are dismissed.  Count IV survives defendant's Motion to Dismiss.

ENTERED this 24th day of August, 2012.

*Gregory K. Frizzell*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT